UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KEITH L. NASH AND JAMAR HURSE,<br><br>                            Plaintiffs,<br>     v.<br><br>RICK ROBINSON, *et al*.,<br><br>                            Defendants. | Case No. 09-5178RBL/JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR:<br>November 26, 2010 |

       This title 42 U.S.C. § 1983 Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to title 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Magistrate Judge's Rules MJR 1, MJR 3, and MJR 4.

       Before the court is defendants' motion for summary judgment brought pursuant to Fed. R. Civ. P. 56 (c) (ECF. No. 53). Plaintiff Hurse did not respond to the motion. Local Rule 7 (b)(2) provides that "[i]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." The court recommends the motion for summary judgment be GRANTED as to plaintiff Hurse for failure to respond to this motion.

REPORT AND RECOMMENDATION - 1

The court has considered the motion and plaintiff Nash's response and recommends the motion be GRANTED as to plaintiff Nash on all claims, as well.  Plaintiff has no liberty interest in his classification as a level III sex offender.  His remaining claims -- that he was denied funds for housing, schooling, food, and bus passes because of his race -- are conclusory and he has not come forward with evidence to support his claim of racial animus.  When facing a motion for summary judgment, plaintiff cannot rest on mere allegations and conclusory statements, but must come forward with admissible proof to create a genuine issue of fact.  Plaintiff Nash has failed to do so; therefore, summary judgment is appropriate.

In addition, defendants have raised the affirmative defense of qualified immunity.  In his response, plaintiff Nash argues that he is entitled to conduct further discovery (ECF No. 59).  Furthermore, plaintiff Nash has had 17 months to conduct discovery.  Contrary to plaintiff Nash's argument (ECF No. 59, page 7), the court does not order discovery unless a discovery dispute arises and a motion is properly presented to the court.  Otherwise, it is plaintiff's obligation to pursue discovery, which he has apparently failed to do since filing this action.  Furthermore, he fails to show how further discovery will help him respond to this motion.  The motion for summary judgment regarding qualified immunity is primarily based on the sufficiency of the complaint; the legal issue of qualified immunity does not raise issues of fact requiring discovery.  Therefore, the court recommends that the motion be GRANTED in its entirety, and that this action be DISMISSED WITH PREJUDICE.

FACTUAL BACKGROUND

Plaintiff challenges his level III sex offender classification claiming he was not provided a hearing or the ability to contest his classification (ECF No.11, page 7).  He also challenges numerous policies regarding community supervision, and alleges he did not receive benefits such

REPORT AND RECOMMENDATION - 2

as money for transportation, food, clothing, and housing (ECF No. 11, pages 7 - 8). In addition, Mr. Nash also challenges a probation hearing and alleges a denial of due process at that hearing (ECF No. 11, pages 17 – 20). Plaintiff alleges the denial of funds is racially motivated (ECF No. 11, page 8) and that he is the victim of cruel and unusual punishment (ECF No. 11, pages 8 – 10). Plaintiff requests injunctive relief, including release from community supervision. Plaintiff also asks for nominal damages (ECF No. 11, pages 11 - 13). Plaintiff alleges a violation of his First, Fourth, Eighth, and Fourteenth Amendment rights.

Mr. Nash was convicted of rape of a child in the second degree and served the incarceration portion of his sentence. On November 10, 2007, he began serving 36 months of community custody. When he was released from prison he was not given gate money. Instead, the Department of Corrections transported him to Clark County and he was told to register as a sex offender within 24 hours. On November 21, 2007, he was given transition funds (ECF No. 53, page 4). The funds are not "mandatory" as plaintiff states in the amended complaint (ECF No. 54, Declaration of Mark Jobson, Exhibit 2)  The statement initialed by Mr. Nash states "Per RCW 9.94A.637 (5), I have been notified of the Department's Voluntary Assistance of Released Offenders." See also   (ECF No. 54, Policy No. 350.210, page 2).

Funds for food, clothing, and transportation, are designed to help an offender transition and offenders are counseled on the steps they must take to become self sufficient (ECF No. 54, Policy No. 350.210).

Mr. Nash was not prohibited from attending college, but because of his status as a level III sex offender, he was required to submit a safety plan. There is no evidence in the record that Mr. Nash ever submitted a plan for approval (ECF No. 55, Declaration of Glenda Amell, page 2 ¶ 4(stating that to the best of her knowledge, he never filed such a plan). Mr. Nash refused to

REPORT AND RECOMMENDATION - 3

sign papers prior to his release to obtain an interstate compact transfer to Florida where, apparently, his resources and support system is located (ECF No. 55, Declaration of Glenda Amell, page 3 ¶ 8.

On March 20, 2008, prior to a polygraph test, Mr. Nash admitted to drinking, using marijuana, having contact with minors, and viewing sexually explicit material.  A subsequent search of his residence produced two "buds of marijuana." (ECF. No. 55, Declaration of Glenda Amell, page 4 ¶ 11). He was taken back into custody based on his conduct.

Mr. Nash received "several bus passes, both monthly and day passes" after his release from prison (ECF No. 55, Declaration of Glenda Amell, page 4 ¶ 13).  The passes are issued on an availability basis; race is not a factor. Id.  One of the criteria is length of time a person has been out of prison and the funds are used first for persons just transitioning from prison to the community (ECF No. 55, Declaration of Glenda Amell, page 5 ¶ 17).

Mr. Nash failed to report for two consecutive days in late January of 2009 and an administrative warrant for his arrest was issued on February 1, 2009.  On February 2, 2009, Mr. Nash reported and the warrant was quashed.  On February 9, 2009, Mr. Nash signed a stipulation that he had failed to report daily and his sanction was that he enter a "Moral Reconation [sic] Therapy" Group (MRT) (ECF No. 55, Declaration of Gelinda Amell, page 6 ¶ 21).

Mr. Nash contends the actions of the three defendants, who are community corrections officers, violated his First, Fourth, Fifth, Eighth and Fourteenth Amendment rights (ECF No. 11).

STANDARD OF REVIEW

In a federal court, summary judgment should be granted under Fed. R. Civ. P. 56(c) if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no

REPORT AND RECOMMENDATION - 4

genuine issue as to any material fact. Tarin v. County of Los Angeles, 123 F.3d 1259, 1263 (9th Cir.1997). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). That burden may be met by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, Fed. R. Civ. P. 56(e) requires the nonmoving party to go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 323-24; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## DISCUSSION

Plaintiff may not rest on his complaint. Before analyzing the various claims raised by plaintiff Nash in his amended complaint, it should be noted that Mr. Nash has presented no admissible evidence to support his complaint. The response includes vague and unsupported legal theories and conclusory statements, unsupported by affidavits or other evidence.

The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T. W. Elec. Service Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The court must resolve any factual dispute or controversy in favor of the nonmoving party only if the facts specifically attested to by the nonmoving party contradict facts specifically attested to by the moving party. Id. Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

There is no genuine issue of fact that has been raised by Plaintiff Nash. Therefore, summary judgment is appropriate for this reason alone. See Matsushita Elec. Indus. Co. v.

REPORT AND RECOMMENDATION - 5

Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56 (e).

There are several other reasons why plaintiff's complaint should be dismissed that constitute procedural bars to this action.

First, plaintiff is in effect seeking de facto reversal of his sentence and judgment. In the request for relief, he asks the court to "correct the criminal judgment and sentence to the correct amount of time that was imposed while he is currently placed of community custody" (ECF. No. 11, page 12). He also asks the court to release him from "Community Custody Probation" or in the alternative from the "custody, authority, discretion" of the defendants (ECF. No. 11, page 12).

Plaintiff's requested relief implicates the Rooker -Feldman doctrine. The doctrine takes its name from Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). Rooker held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts. See 263 U.S. at 415-16. Feldman held that this jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a state court has already decided. See 460 U.S. at 486-87. The state court has decided plaintiff's sentence. To the extent that plaintiff is asking the court to alter his criminal sentence, then the doctrine would prohibit this court from doing so.

In addition, plaintiff is challenging the constitutionality of his sentence (ECF No. 11, page 11). A civil rights action is not a substitute for a habeas corpus action. In June 1994, the United States Supreme Court held that "[e]ven a prisoner who has fully exhausted available state

REPORT AND RECOMMENDATION - 6

remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." Heck v. Humphrey, 512 U.S. 477, 487 (1994). The court added:

> Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. . . . [A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

Id. at 489. "[T]he determination whether a challenge is properly brought under § 1983 must be made based upon whether 'the nature of the challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment.' Id. If the court concludes that the challenge would necessarily imply the invalidity of the judgment or continuing confinement, then the challenge must be brought as a petition for a writ of habeas corpus, not under § 1983." Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir.1997) (*quoting* Edwards v. Balisok, 520 U.S. 641 (1997)). Here, plaintiff is asking the court to shorten the length of time he will serve on Community Custody. He does not show that the state courts have addressed his claim or granted him relief.

Finally, the defendants are acting pursuant to a state court judgment and sentence in their supervision of Mr. Nash. They are entitled to qualified immunity for their actions because they have the right to rely on that judgment and sentence in setting the terms of supervision unless or until the sentence is modified or overturned. It is well settled that a public official who performs a discretionary function enjoys qualified immunity in a civil action for damages, provided that their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 480 (1991).

REPORT AND RECOMMENDATION - 7

The Supreme Court established a two-part test for determining whether an official is entitled to qualified immunity. First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a federal statutory or constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). Second, if a violation is articulated, the court must ascertain whether the federal statutory or constitutional right at issue was "clearly established" at the time of the alleged violation. Saucier, 533 U.S. at 201. Plaintiff does not enjoy the panoply of rights of a normal citizen because his rights have not been restored. To the extent that his rights to travel, housing, job, or education have been affected by the defendants' actions, the defendants could have reasonably believed their actions constitutional because they were consistent with the sentence issued in Mr. Nash's criminal case. The court therefore recommends the court GRANT defendants' motion for summary judgment on all claims based on their qualified immunity.

Nevertheless, despite these overall problems with plaintiff's complaint, the court will address each of the claims raised by plaintiff Nash because they, additionally, fail to state legally cognizable claims.

A. *Eighth Amendment claims*.

The Eighth Amendment prohibits infliction of cruel and unusual punishment. The Eighth Amendment is violated if an inmate is deprived of the minimal civilized measure of life's necessities. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Young v. Quinlan, 960 F.2d 351, 359 (3rd Cir. 1992). To establish an Eighth Amendment violation, an inmate must allege both an objective element -- that the deprivation was sufficiently serious -- and a subjective element -- that a prison official acted with deliberate indifference. Young, 960 F.2d at 359-60. To constitute "deliberate indifference," an official must know of and disregard an excessive risk to

REPORT AND RECOMMENDATION - 8

inmate health or safety. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and the official must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Defendants state that the Eighth Amendment does not apply to plaintiff because he was not in confinement at the time of the alleged violations (ECF No. 53). The court does not decide this issue because Mr. Nash is on community custody and thus, is under the control of the Department of Corrections.

What is clear from the record is that none of the issues raised by plaintiff rise to the level of an Eighth Amendment violation.

Plaintiff complains about:

1. His classification as a sex offender (ECF No. 11 page 2).
2. Not being able to attend college (ECF No. 11 page 2).
3. Lack of funds for transportation, food, clothing, and housing (ECF No. 11 page 2).
4. Restrictions on where he could go (ECF No. 11 page 2).
5. Release without "gate funds" (ECF No. 11 page 2).
6. His living conditions (ECF No. 11 page 2).
7. Violations of probation on March 20, 2008 (ECF No. 11 page 3).

In proving that plaintiff's alleged deprivation of rights – the objective component – was a violation of the Eighth Amendment, an inmate must establish that there was some degree of actual or potential injury, and that society considers the conduct at issue to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to those acts. Helling

REPORT AND RECOMMENDATION - 9

v. McKinney, 509 U.S. 25 (1993).  The Ninth Circuit has examined cases where Eighth Amendment violations exist:

> In McMillian, for example, prison guards punched an inmate in the mouth, eyes, chest, and stomach while another officer held the inmate in place and kicked and punched him from behind.  McMillian, 503 U.S. at 4, 112 S.Ct. at 997-09.  The prisoner suffered swelling of the face, mouth, and lip, and the blows loosened his teeth and cracked his dental plate.  Id.  This egregious conduct was sufficient to state an Eighth Amendment claim.  See also McCord v. Maggio, 927 F.2d 844, 848 (5th Cir. 1991)(Eighth Amendment violation when a prisoner was forced to live and sleep for two years in an unlit cell with backed up sewage and roaches); Fruit v. Norris, 905 F.2d 1147, 1150 (8th Cir. 1990)(Eighth Amendment violation when prison officials compelled inmates to work inside the prison's sewage lift-pump station without protective clothing and equipment); Parrish v. Johnson, 800 F. 2d 600, 605 (6th Cir. 1986)(Eighth Amendment violation when prison guard assaulted paraplegic inmate with a knife and forced him to sit in his own feces); Vaughan v. Ricketts, 859 F.2d 736, 741 (9th Cir. 1988)(prison officials not entitled to qualified immunity regarding inmate's Eight Amendment claim where untrained medical assistants performed digital rectal cavity searches on unsanitary table in view of other prison personnel); Cooper v. Sheriff of Lubbock County, 929 F.2d 1078, 1083 (5th Cir. 1991)(forfeiture of adequate food for significant periods of time is a "form of corporal punishment" forbidden by the Eighth Amendment); French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985)(concluding kitchen and food storage areas unsanitary and unconstitutional); Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985)(inadequate "ventilation and airflow" violates Eighth Amendment if it "undermines the health of inmates and the sanitation of the penitentiary); Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)(Eighth Amendment is violated where prison officials completely deny exercise to some prisoners and limit the remaining population to less than five hours indoor exercise per week).  "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." McMillian, 503 U.S. at 9. . . .
>
> Sommers v. Thurman, 109 F.3d 614, 623 (9th Cir. 1997).

Mr. Nash's allegations fail to rise to the level of Eighth Amendment violations.  He is not being held in prison and his living conditions, while subject to restrictions, are not so grave that they violate contemporary standards of decency.  The restrictions, as alleged, and as reported by defendants, constitute reasonable attempts to protect the public from a level III sex offender and

are not in any way similar to the grievances addressed in Sommers, or other similar cases. Further, Mr. Nash failed to comply with certain court instructions, which resulted in the loss of certain benefits he otherwise may have enjoyed.  For instance, he refused to sign papers to receive consideration for interstate compact transfer to Florida where he had resources available to help him.  Thus, his current condition is to some extent one of his own making.

While it is true that Mr. Nash may have to submit a plan that alleviates concerns about his being in close proximity to minors if he wishes to go to college, work in a fast food restaurant, or go to a shopping mall or the library, these restraints are part of the valid police powers of the state in light of his conviction.  Mr. Nash is still on community supervision as part of his sentence and he does not have the same constitutional rights as other persons because of that conviction.  U.S. v Kincade, 379 F. 3d 813, 833 (9th Cir. 2004).  Plaintiff is still free to make some choices where he goes and where he lives.  Further, the United States Constitution does not mandate that the state provide funds for Mr. Nash once he is released from confinement.  None of the conditions complained of involve a denial of the minimal civilized measure of life's necessities. The court concludes that plaintiff's Eighth Amendment claims fail as a matter of law. The court, therefore, recommends the court GRANT defendants' motion for summary judgment as to the Eighth Amendment.

B. *Fourth Amendment claims.*

Plaintiff does not have the full rights of other persons.  This is because of his conviction and sentence.  He has a term of 36 months of community custody where the Department of Corrections can and does control his actions.  The Washington State Superior Court imposed terms and conditions in the sentence and judgment.  That document is before the court (ECF. No.

REPORT AND RECOMMENDATION - 11

54, Declaration of Mark Jobson attachments).  The terms imposed by the superior court include this statement:

> While on community placement or community custody, the defendant shall: (1) report to and be available for contact with the assigned community corrections officer as directed; (2) work at Department of Corrections-approved education, employment and/or community service; (3) not consume controlled substances except pursuant to lawfully issued prescriptions; (4) not possess controlled substances while in community custody; (5) pay supervision fees as determined by the Department of Corrections; (6) perform affirmative acts necessary to monitor compliance with the orders of the court as required by the Department of Corrections. The residence location and living arrangements are subject to the prior approval of the Department of Corrections while in community placement or community custody.  Community custody for sex offenders may be extended for up to the statutory maximum of the sentence.  Violation of community custody imposed for a sex offense may result in additional confinement.

The Superior Court imposed other conditions that were attached to the sentence and judgment as appendix 4.7.  Those conditions are:

> 1. The defendant shall, within 30 days of being placed on community custody, submit to a sexual deviancy evaluation with a therapist approved by his Community Corrections Officer, and follow all treatment recommendation;
>
> 2. The defendant shall have no contact with minor aged children without prior approval of Community Corrections Officer, and sexual deviancy counselor, if any; except for his own biological children;
>
> 3. The defendant shall not loiter in or frequent places where minors are known to congregate without specific permission of Community Corrections Officer and sexual deviancy counselor, if any;
>
> 4. The defendant shall not enter into any relationship with persons who have minor age children in their custody or care without prior approval of Community Corrections Officer, and sexual deviancy counselor, if any; except for his own biological children;
>
> 5. The defendant shall not possess or view pornographic material, as defined by Community Corrections Officer and sexual deviancy counselor, if any;

REPORT AND RECOMMENDATION - 12

    6.    The defendant shall not consume or possess alcohol or controlled substances except as prescribed by a licensed physician and with notification of Community Officer;

    7.    Provide urine specimens for random urinalysis and breathalyzer at direction of Community Corrections Officer and sexual deviancy counselor, if any;

    8.    Not change living arrangements or location without prior approval of Community Corrections Officer;

    9.    The defendant shall not possess or control firearms ammunition or dangerous weapons, as defined by Community Corrections Officer;

    10.    The defendant shall not possess or view pornographic material, as defined by Community Corrections Officer and/or sexual deviancy counselor, or enter establishments where pornography is sold or available.

(ECF. No. 54, Declaration of Mark Jobson, attached judgment and sentence for Mr. Nash).

    All of the incidents Mr. Nash complains of -- his not being able to go certain places, his not being able to work in fast food restaurants, etc. -- are a direct result of the defendants performing their jobs and carrying out this court ordered judgment and sentence. Plaintiff fails to articulate how any of these restrictions violate his Fourth Amendment rights.

    Mr. Nash alleges that he was threatened with arrest on an improper warrant, and that defendant Tony Shaver conducted an illegal search concerning the plaintiff's "ware about" (sic) while at the veterans hospital (ECF No. 11, page 5). By virtue of being on community custody, Mr. Nash is the functional equivalent of a parolee. Sherman v. Reilly, 364 F. Supp. 2d 1216, 1218-19 (D. Or. 2005). A warrant for his arrest for violation of these conditions of release is not subject to normal Fourth Amendment considerations. As stated by one court:

> [P]arolees are neither totally stripped nor fully vested with constitutional protections. They are different from other citizens and they may, in certain circumstances possess fewer constitutional rights. United States v. Polito, 583 F.2d 48, 54-55 (2nd Cir.1978) (detention of parolee under parole violator's arrest warrant is not an "arrest" as defined in the Fourth Amendment). Further:

REPORT AND RECOMMENDATION - 13

> There is a logical reason to distinguish between the retaking of a parolee and the apprehension of one to be charged with a crime. The parole revocation procedure is not part of a criminal prosecution, and a parolee may be arrested and reincarcerated for reasons that would not permit the arrest or incarceration of other persons. Therefore, it is reasonable to assume an administrative warrant issued for retaking of a parolee should not be judged by exacting Fourth Amendment standards.
>
> Henrique v. U.S. Marshal, 476 F.Supp. at 629. See also Hyser v. Reed, 318 F.2d 225, 241 (D.C. Cir.1963) (upholding parole violator warrant noting "Congress evinced no intent to require precisely the same formalities and safeguards as to those contained in the Constitution for criminal arrest"); Calhoun v. New York State. Div. of Parole Officers, 999 F.2d 647, 650 (2d Cir.1993) (a parole warrant "is an administrative warrant used in retaking and detaining a parolee or conditionally released prisoner."); Moore v. Smith, 412 F.2d 720, 725 (7th Cir.1969) (Parole Commission issues "administrative warrant" for alleged parole violations); U.S. ex rel. Randazzo v. Follette, 418 F.2d 1319, 1322 (2nd Cir.1969) (a parole violator's arrest warrant "is designated as 'administrative.' Its issuance does not depend on a finding of probable cause."); Hyser v. Reed, 318 F.2d at 241 (a parole violator's arrest warrant is an "administrative warrant" and is not required to have "precisely the same formalities and safeguards as to those contained in the Constitution for criminal arrest."); Jarman v. United States, 92 F.2d 309, 311 (4th Cir.1937) (parolee was already "under arrest" and parole violator warrant is not a warrant for arrest as contemplated by the Fourth Amendment).

Sherman v. Reilly, 364 F. Supp. 2d 1216, 1218-19 (D. Or. 2005); *affirmed* Sherman v. U.S. Parole Com'n., 502 F.2d 869 (9th Cir. 2007).

The facts show that plaintiff failed to report for two days at the end of January, 2009. On February 1, a warrant for his arrest was requested. He reported on February 2, 2009, and the warrant was quashed; however, the issue of his failure to report was not addressed until February 9, 2009, when he agreed to sign a stipulation admitting his failure to report and agreeing to take Moral Recognition Therapy "MRT", as a sanction.

The warrant was requested after Mr. Nash failed to report for two days. The warrant was cancelled one day after it was issued, when Mr. Nash finally reported on February 2. However, Mr. Nash was still in violation of the terms of his community custody because he had failed to

REPORT AND RECOMMENDATION - 14

report on January 28 and 29.  He entered into a stipulated agreement admitting his violation on February 9, 2009. There was no violation of plaintiff Nash's Fourth Amendment rights.  Mr. Nash's claim and argument on this matter is frivolous.

Plaintiff also makes allegations regarding the defendants conduct at a Veterans Medical Center.  He argues that defendants were armed while requesting information concerning his location and that they sought medical and financial information concerning him. (ECF No. 11, page 7.)  Plaintiff cites to no authority for the proposition that it would be a Fourth Amendment violation for defendants to be armed while engaged in official business.  Defendants are community corrections officers who are charged with keeping track of plaintiff and monitoring his actions.  His argument that defendant Shaver was escorted from the V.A. Medical Center because he was armed does not state a claim regarding any right or duty owed plaintiff.  While federal law may have prohibited the defendants from being armed on federal property, that law grants no benefit to the plaintiff.  There is no evidence that defendants did anything with their weapons, other than have them in their custody.  Even assuming this to be the case, this is not inconsistent with their official duties.  Further, while plaintiff alleges that defendants requested information concerning his financial status and medical records, he does not allege any information was obtained in violation of a right or duty owed him.  Plaintiff's Fourth Amendment allegations fail to state a claim.

The court concludes that plaintiff's Fourth Amendment claims fail as a matter of law. The court, therefore, recommends that the district court GRANT defendants' motion for summary judgment as to the Fourth Amendment claims.

C.   *First Amendment Claims.*

Although he claims that his First Amendment rights have been violated (ECF No. 11, page 11), Plaintiff does not specify how defendants' actions allegedly violated these rights. The First Amendment protects speech, freedom of religion, the right to assembly, and freedom of association. Even giving plaintiff's complaint a liberal reading, this court cannot determine the basis for plaintiff Nash's First Amendment claim. The district court should grant summary judgment on this claim.

D.   *Fifth Amendment.*

Plaintiff further alleges that his Fifth Amendment rights have been violated. The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself. This privilege is applicable to the state through the due process clause of the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1 (1964).

Plaintiff fails to show how the Fifth Amendment has been violated. The Fifth Amendment implicates criminal proceedings only. His parole revocation proceeding and his proceedings involving violations of the community custody portion of his sentence are not and are considered administrative rather than criminal proceedings because he has not been totally released from his prior sentence and these are not new criminal charges. Instead he is being found in violation of the terms of his community custody which is a conditional release from prison. See Sherman v. Reilly, 364 F. Supp. 2d 1216, 1218-19 (D. Or. 2005). Finding no constitutional issue the court recommends defendants motion for summary judgment be GRANTED as to the Fifth Amendment.

REPORT AND RECOMMENDATION - 16

E. *Fourteenth Amendment claims*.

The Fourteenth Amendment provides that no person will be deprived of life, liberty, or property without due process of law. By its terms there must be an interest in life, liberty, or property at stake for the amendment to apply.

Mr. Nash argues he was not provided with a hearing or allowed to appeal his classification as a level III sex offender. That classification decision was made by the End of Sentence Review Committee prior to Mr. Nash being released from prison (ECF. No. 53, page 15). By state statute, the committee makes the decision based on the information from the file. The classification is a matter of state law and does not violate any federal right. See RCW 9A.44.130. As a general rule inmates possess no liberty interest in their classification. This is because classification decisions do not implicate the due process clause. See Moody v. Daggett, 429 U.S. 215, 224-25 (1976).

Mr. Nash's parole revocation hearing does implicate a liberty interest, however. As mentioned above, decisions that touch on the fact or duration of confinement must be brought as habeas corpus petitions and not through a civil rights action. Heck v. Humphrey, 512 U.S. 477, 487 (1994).

F. *Equal protection and racial discrimination.*

Mr. Nash alleges that the reason he did not receive bus passes and other funds was because he is African American (Dkt. # 11). He alleges that he saw white persons receive these funds while they were being denied him (Dkt. # 11). This claim would survive a motion to dismiss. But, defendants have moved for summary judgment, and they place before the court sworn affidavits showing that the policy is not to discriminate based on race, and that because the amount of funding available is limited funding and is used first for persons who have just left

REPORT AND RECOMMENDATION - 17

prison and are transitioning (ECF. No. 55 and 56). Mr. Shaver states in his declaration that the funds for bus passes were for persons who had left prison within the last 30 days (ECF. No. 56, Declaration of Anthony Shaver, pages 4-5 ). Defendants swear that Mr. Nash did receive several monthly and daily bus passes (ECF. No. 55).  Review of the complaint shows plaintiff complaining specifically of events that allegedly occurred between October 21, 2008 and February 27, 2009.  This would have been well after his release from prison in November of 2007.  Plaintiff Nash has presented no admissible evidence to the contrary.

In response to the motion for summary judgment Mr. Nash argues he is entitled to discovery and a postponement of this motion pursuant to Fed. R. Civ. P. 56 (f).  The defendants state no discovery has been requested (ECF. No. 60).  Mr. Nash has not identified any specific discovery he believes would help him respond to the pending motion.  The court does not find delay of the motion under Fed. R. Civ. P. 56 (f) appropriate under this set of facts.

The defendants are entitled to summary judgment and the action should be DISMISSED WITH PREJUDICE.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **November 26, 2010**, as noted in the caption.

DATED this 29th day of October, 2010.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18